**1811.**
**JUNE.**

Fitzhugh
vs
Helen

The return of a sheriff to a writ of attachment on warrant was, that he had attached of the goods, &c of the defendant, "his life estate in all the lands got by his wife, supposed to be 450 acres"—Held, that the return was defective in not describing with sufficient certainty the land attached, so as to lay a legal foundation for a judgment of condemnation.

## FITZHUGH vs. HELLEN.

ERROR to *Calvert* County Court. On the 7th of May 1807, a writ of attachment on warrant, under the act of 1795, *ch.* 56, was issued by the defendant in error, (the plaintiff below,) against the goods and chattels, lands and tenements, of the plaintiff in error, (the defendant below;) the writ was returned by the sheriff, "attached as per schedule." In the schedule, among other property of the defendant below, included therein and appraised, was "his life estate in all the lands got by his wife, supposed to be 450 acres, at 18s 9d per acre, £414 7 6." The defendant not appearing, judgment of condemnation was entered for the whole of the property included in the schedule, towards satisfying the plaintiff's claim. To reverse that judgment the present writ of error was brought.

The cause was argued before CHASE, Ch. J. and BUCHANAN, NICHOLSON, and EARLE, J. by

*T. Buchanan* and *Magruder*, for the Plaintiff in error (a); and by

*Taney*, for the Defendant in error.

CHASE, Ch. J. delivered the opinion of the court. The court are of opinion, that the return of the sheriff to the writ of attachment, is defective in not describing with sufficient certainty the land attached, so as to lay a legal foundation for the judgment of condemnation.

JUDGMENT REVERSED.

(a) They referred to *Williamson vs. Perkins*, 1 *Harr. & Johns.* 449.

---

**JUNE.**

In an action against a common carrier, where the plaintiffs directed J L to barter certain chairs for a bale of handkerchiefs, and ship them on board the *Norfolk* packet, to be transported to the plaintiffs, J L had a bale of handkerchiefs delivered on board the packet to the

## D'ANJOU & BALL vs. DEAGLE.

APPEAL from *Baltimore* County Court. This was an action on the case against the defendant, (now appellee,) as a common carrier of goods and chattels from *Baltimore* to *Norfolk*, for negligence, &c. The general issue was pleaded. At the trial the plaintiffs, (now appellants,) gave in evidence, that the defendant, on the 20th of April 1803, and before and afterwards, was the proprietor and

cabin boy, in order that it might be carried to *Norfolk*, and there delivered to the plaintiffs; but it never was delivered to the plaintiffs, and they retained certain moneys of J L in their hands, arising from the sale of butter consigned to them, to the amount of the price of the bale of handkerchiefs, as and for satisfaction. Evidence was given that the recovery in this cause was to be for the use of J L—*Held*, that the action could be sustained.

1811.

D'Anjou & Ball
vs
Deagle

owner of a packet or vessel, which he employed in carrying and transporting passengers and merchandise from the port of *Baltimore* to the port of *Norfolk* in *Virginia*, and thence back to *Baltimore*, for hire and reward. That the plaintiffs had directed *J.* and *R. K. Lowry* of *Baltimore*, to barter certain chairs of the plaintiffs for a bale of Madrass handkerchiefs of the value of $200, and to ship the same for their account and risk, on board the said packet, in order to be transported to *Norfolk*, and there delivered to the plaintiffs. That *J.* & *R. K. Lowry*, pursuant to the instructions of the plaintiffs, committed the bale of handkerchiefs to one *Cannon*, their clerk and assistant, with direction to put them on board the packet belonging to the defendant, in order that they might be carried to *Norfolk*, and there delivered to the plaintiffs. That *Cannon* went on board the packet with the bale of handkerchiefs, and not finding the captain there, he delivered the same to a boy named *Peter Florey*, who was then in the employ of the defendant, and who was called cabinboy of the vessel, but who was proved to have usually received small packages, or bundles of goods or merchandize, sent on board the vessel to be forwarded to *Norfolk*, when they were of a size sufficient to be stowed away in the cabin, and requested him to take particular care of the same, and that they belonged to the plaintiffs, to whom they were to be delivered on the arrival of the vessel at *Norfolk*. They also gave in evidence, that small packages of merchandize, which were intended to be sent to *Norfolk* in the vessel of the defendant, had been frequently committed to the care of *Peter Florey*, employed as aforesaid, in the presence and view of the defendant, and that he never countermanded such delivery, or in any way complained that the same was irregular. That the bale of handkerchiefs never was delivered to the plaintiffs. The defendant then gave in evidence, that the plaintiffs, finding that the handkerchiefs did not come to hand, afterwards retained certain moneys of *J.* and *R. K. Lowry*, then in their hands, arising from the sale of a quantity of butter, consigned to the plaintiffs by *J.* and *R. K. Lowry*, to the amount of the price and value of the handkerchiefs, and as and for satisfaction and payment thereof. He also gave in evidence, that the recovery in this cause was to be for the use of *J.* and *R. K. Lowry*, and that they had ordered the

1811.

Brayfield
vs
Brayfield

suit in this behalf to be instituted and conducted. He then prayed the court to direct the jury, that if the jury should, from the evidence, be of opinion that the plaintiffs applied the proceeds of the butter, consigned to them by *J.* and *R. K. Lowry*, to satisfy and pay themselves for the handkerchiefs which were not delivered, and that *J.* and *R. K. Lowry* have assented to that act, then that the plaintiffs upon the record are not entitled to recover in this form of action. This opinion and direction the court [*Nicholson*, Ch. J. and *Hollingsworth* and *Jones*, A. J.] accordingly gave. The plaintiffs excepted; and the verdict and judgment being against them they appealed to this court.

The cause was argued before POLK, BUCHANAN, and EARLE, J. by

*Winder*, for the Appellants; and by
*Stephen*, for the Appellee.

JUDGMENT REVERSED, AND PROCEDENDO AWARDED.

——————

JUNE.

A nuncupative will established where the personal property, of which the deceased died possessed, amounted by the inventory to $3236 48.

A nuncupative will was proved by three witnesses, one of whom was the wife of one of the legatees, but which legatee had released all his interest, &c to certain of the representatives of the deceased; and although the release was not accepted by the releasees, it was held to be a good release, and that the will was legally proved

### BRAYFIELD VS. BRAYFIELD.

APPEAL from a decree of the Orphans Court of Frederick county. The nuncupative will of *Samuel Brayfield*, pronounced by him in the presence of three witnesses on the 22d of April 1807, two days before his death, he being then in his last sickness, at his own house, and afterwards on the 28th of April 1807, reduced to writing, and signed by the three witnesses in the presence of two witnesses, was offered for probate in the orphans court. One of the witnesses of the will was the wife of one of the legatees, but which legatee, by a release duly executed on the 28th of April 1807, released to *John Brayfield*, (the appellee,) and his sister *Milley*, a brother and sister of the whole blood of the deceased, all his right, claim and interest, under the will. The other property of the deceased, amounting by an inventory thereof, to $3236 48, he bequeathed to his wife and her two children, *S* and *J. Pancoast*, then living with the deceased, and to whom he was guardian. Citations issued for the persons related to the deceased, none of whom but *Jane Brayfield*, (the appellant,) the widow of the deceased, were summoned. She